IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| DANA DUNN | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | |
| v. | ) | Civil Action No. 1:15-cv-975 |
|  | ) | |
|  | ) | |
| ACLAIRO PHARMACEUTICAL DEVELOPMENT GROUP, 401(K) PLAN | ) ) ) | |
|  | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Aclairo Pharmaceutical Development Group 401(k) Plan's ("Defendant" or "the Plan") Motion for Summary Judgment.

Plaintiff Dana Dunn ("Plaintiff") resides in Oakton, Virginia, and was an equal co-owner of Aclairo Pharmaceutical Development Group, Inc. ("Aclairo") with Dr. Hilary Sheevers and Dr. Susan Wilson. Defendant is an employee benefit plan created pursuant to the Employee Retirement Income Security Act ("ERISA") § 3(1), 29 U.S.C. § 1002(3). Aclairo is the plan "sponsor" pursuant to ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and the plan "administrator" pursuant to ERISA § 1002(16)(A), 29 U.S.C. § 1002(16)(A).

Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks recovery of funds allegedly owed to her under the Plan as a profit sharing contribution for the Plan year January 1, 2012 through December 31, 2012 ("Plan Year 2012"), and for the Plan year January 1, 2013 through December 31, 2013 ("Plan Year 2013"). Plaintiff contends Aclairo abused its discretion by not allocating the full amount owed under the profit sharing plan for Plan Year 2012, and by allocating zero dollars under the profit sharing plan for Plan Year 2013.

This Court has jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e) because the Plan conducts business in this District.

Plaintiff was a co-owner, employee of Aclairo, and Trustee[1] of the Plan until she resigned on December 26, 2013. There are three separate buckets into which a retirement contribution can be made. The first is a salary reduction for a deferred salary payment. Plaintiff could have deferred approximately $15,000 of her salary each year into her retirement account. This bucket is not referenced or challenged in the pleadings and is not relevant to the present analysis.

---

[1] The Trustee's duties including having "exclusive authority, discretion, and responsibility for the management and control of the assets of the trust Fund in accordance with the provisions of the Plan..."

2

The second bucket is a 401(k) ADP safe harbor non-elective contribution. This is a non-discretionary payment by the company into an employee's retirement account. Plaintiff received the same amount as the other co-owners (Dr. Sheevers and Dr. Wilson) for Plan Year 2012 and Plan Year 2013, which was approximately $7,600 each year. This bucket is also not referenced or challenged in the pleadings and is not relevant to the present analysis.

The third bucket is the discretionary profit sharing plan.[2] It is not disputed that the Plan documents state that Aclairo has complete discretion to make or not make any contributions under the profit sharing plan. It is also not disputed that Plaintiff received a $42,500 profit sharing contribution for Plan Year 2012, and did not receive a profit sharing contribution for Plan Year 2013. The profit sharing contributions for Plan Year 2012 were paid in 2013, and the profit sharing contributions for Plan Year 2013 were paid in 2014.[3] Pursuant to the Plan documents, the Trustee is responsible for allocating the appropriate amounts to the participants upon recommendation from the Plan Administrator.

---

[2] The profit sharing contribution is also known as the "Employer Non-Elective" plan.
[3] There is nothing in the record that indicates which month in 2013 or 2014 the profit sharing contributions were paid.

3

A motion to dismiss must be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure "where materials outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. The conversion is governed by principles of substance rather than form and it is within the Court's discretion to decide whether to exclude such materials or convert into a motion for summary judgment.[4] Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp., 109 F.3d 993, 996 (4th Cir. 1997); see also Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 251-52 (4th Cir. 1991).

Under Rule 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is not a "disfavored procedural shortcut, but rather [an] integral part of the Federal Rules ... which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Id. While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving

---

[4] The Court converted Defendant's Motion to Dismiss to a Motion for Summary Judgment on November 13, 2015.

party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[I]t is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." Design Res., Inc. v. Leather Indus. Of Am., 789 F.3d 495, 500 (4th Cir. 2015) (citations and quotations omitted).

In the latter part of 2013, disputes arose between the co-owners of Aclairo – Dunn, Sheevers, and Wilson. In the process of these disputes, Plaintiff filed suit against Aclairo in Fairfax County Circuit Court in February of 2014, and subsequently signed a Settlement Agreement on or about May 27, 2014. The Settlement Agreement states that the "[P]arties now wish to ... memorialize the fact that they have fully settled and released all claims between and among them that are now pending and that may otherwise exist as of the Effective Date..." The Settlement Agreement further contains the following release language:

> "Dunn parties knowingly and voluntarily release and forever discharge the Aclairo Parties, the Sheevers Parties and Wilson Parties of and from any and all claims, causes of action, rights of action, and

5

> demands of every name and nature, including, without limitation, for torts, fiduciary claims, statutory claims, equitable claims, claims for fees or costs, contractual claims, claims for injunctive relief, claims for declaratory relief, administrative claims, any claim of an alleged violation of the Employment Retirement Income Security Act of 1974 (except for any vested benefits under any tax qualified benefit plan)..."

The Aclairo Parties are defined as "itself and its shareholders, directors, officers, affiliated entities, successors, trustees, assigns, employees, agents, attorneys-in-fact, attorneys, and representatives (collectively, the "Aclairo Parties")."

The language of the Settlement Agreement is clear in releasing "affiliated entities," and "trustees" - the Plan and Dr. Sheevers and Dr. Wilson respectively. The question then turns to whether Plaintiff's claims fall within the exception for any vested benefits. "Vesting is the non-forfeitable balance of your employer contribution account(s) that you will be entitled to receive..." Consistent with the Plan documents, what is vested under the discretionary plan is what is contributed. As such, Plaintiff had no right to a specific contribution from the Plan because the profit sharing plan is an unvested discretionary allocation. Plaintiff's claim for amounts owed for

6

Plan Year 2012 were already paid to her and nothing indicates that she should have been entitled to a higher discretionary amount. For Plan Year 2013, Plaintiff did not receive a contribution per the discretion of the Plan. It is well established that "ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued." Gable v. Sweetheart Cup Co., 35 F.3d 851, 855 (4th Cir. 1994), cert. denied, 514 U.S. 1056 (1995).

The language of the Plan documents is abundantly clear in granting Aclairo full discretion as to whether to make a profit-sharing contribution. The Plan documents state, "[T]here are 3 different contribution types available in the plan: Employer Non-Elective: This is also known as a profit sharing contribution. Your employer will, **at its discretion** (emphasis added) make a contribution to the plan." The Plan documents further state that "the company **may** make a profit sharing contribution to the plan each year and in such amount, **if any, as it may determine** ... you will be eligible to receive an allocation of the **discretionary** employer profit sharing contribution...(emphasis added)." The question then turns to whether Aclairo abused its discretion in not providing an additional allocation to Plaintiff for Plan Year 2012, and for providing no allocation to Plaintiff for Plan Year 2013. The United States Supreme Court held in Firestone Tire & Rubber Co.

7

v. Bruch, that "where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." 489 U.S. 101, 111 (1989) (quoting Restatement (Second) of Trusts § 187 (1959)). Thus, "a trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000); de Nobel v. Vitro Corp., 885 F.2d 1180, 1185-86 (4th Cir. 1989).

This Court finds the profit sharing plan to be an unvested discretionary allocation, and that the Plaintiff knew at the time of the settlement agreement of this unvested discretionary allocation and waived any right she may have had to it.

For the foregoing reasons, Defendant's Motion for Summary Judgment must be granted.

An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 10, 2016